ALLSTATE INSURANCE COMPANY v CITIZENS INSURANCE
COMPANY OF AMERICA

Docket No. 55533. Submitted April 6, 1982, at Detroit.—Decided
August 23, 1982.

Plaintiff, Allstate Insurance Company, issued a policy of no-fault
insurance to B. C. Lynn Construction, Inc., of which Bernard C.
Lynn was the president and sole shareholder. In 1975, Patrick
Lynn lived with his father, Bernard, and worked as a laborer
for his father's corporation. The corporation provided three
automobiles for the personal use of Bernard Lynn and his
family. All three autos were owned, registered, and insured in
the name of the corporation which paid for the cars and the
insurance. No member of the Lynn family owned a personal
car. In April 1975, Patrick Lynn was injured while a passenger
in an automobile driven by Keith Ragap, owned by Harry
Ragap and insured by defendant, Citizens Insurance Company
of America. Plaintiff paid medical and work-loss benefits to
Patrick Lynn after the accident. In February 1976, plaintiff
asked defendant to take over the payments, but defendant

REFERENCES FOR POINTS IN HEADNOTES

[1] 7A Am Jur 2d, Automobiles and Highway Traffic § 673.
Who is "owner" within statute making owner responsible for injury
or death inflicted by operator of automobile. 74 ALR3d 739.
[2] 7 Am Jur 2d, Automobile Insurance §§ 246, 247.
Who is "resident" or "member" of same "household" or "family" as
named insured, within liability insurance provision defining addi-
tional insureds. 93 ALR3d 420.
[3] 18 Am Jur 2d, Corporations § 13 et seq.
[4] 18 Am Jur 2d, Corporations § 14 et seq.
Stockholder's personal conduct of operations or management of
assets as factor justifying disregard of corporate entity. 46 ALR3d
428.
[5] 7 Am Jur 2d, Automobile Insurance § 254.
[6] 44 Am Jur 2d, Insurance § 1270.
[7] 44 Am Jur 2d, Insurance § 1709.
Basis and manner of distribution among multiple claimants of
proceeds of liability insurance policy inadequate to pay all claims
in full. 70 ALR2d 416.
[8] 7 Am Jur 2d, Automobile Insurance § 344.

refused. Plaintiff initiated the present action as equitable sub-rogee of Patrick Lynn to compel defendant to make future payments and to seek repayment of the $23,012.49 that plaintiff had paid Patrick Lynn. The Wayne Circuit Court, John H. Hausner, J., awarded a judgment to plaintiff for $44,518.73, which included statutory interest, an interest penalty, attorney fees, and costs. Defendant appeals alleging that it should not be held liable, that the amount of the judgment was wrongly computed, and that it should not be asked to pay an interest penalty. *Held:*

1. The trial court correctly found no liability for personal protection benefits on the part of the plaintiff insurer.

2. Personal protection insurance benefits are payable to the person named in the policy, the person's spouse, or a relative domiciled in the same household, not the owner of the vehicle. The trial court properly found that the insured in the policy at issue was the corporation, B. C. Lynn Construction, Inc.

3. The Court of Appeals will not pierce the corporate veil and hold that under the facts of this case, where a sole stockholder has exclusive use of a corporate vehicle, the stockholder should be regarded as the insured person. The traditional application of the doctrine of piercing the corporate veil is inapplicable here since there have been no allegations of fraud, illegality, or injustice. Other situations where the courts have applied the doctrine involved a shareholder who was a party to the action seeking to avoid the corporate form. Here, a stranger to the corporation is seeking to pierce the corporate veil.

4. It is not appropriate to follow the foreign authority cited by defendant which allowed the piercing of a corporate veil. A different legal issue is involved here and the cited case was limited to its facts.

5. The trial court erred in awarding the plaintiff interest on the claim pursuant to the no-fault act. The purpose of the penalty provision is to see that the injured party is quickly paid. That purpose was fulfilled here. No case law supports the imposition of the penalty provision when the dispute involves two insurers acting in good faith. The interest penalty provision in the no-fault act was not intended to apply between insurers.

Affirmed in part, reversed in part, and remanded.

1. AUTOMOBILES — OWNERS.

An individual with exclusive use of a vehicle for more than 30 days may, in certain circumstances, be regarded as the owner of the vehicle (MCL 257.37; MSA 9.1837).

2. INSURANCE — AUTOMOBILES — PERSONAL PROTECTION BENEFITS.

Personal protection insurance benefits are payable to the person named in the policy, the person's spouse, or a relative domiciled in the same household, not to the owner of the vehicle (MCL 500.3114[1]; MSA 24.13114[1]).

3. CORPORATIONS — LEGAL ENTITIES — SHAREHOLDERS.

A corporation is generally treated as a legal entity distinct from its shareholders; the fiction of a distinct corporate entity separate from the shareholders is a convenience introduced in the law to serve the ends of justice; when this fiction is invoked to subvert justice, it may be ignored by the courts.

4. CORPORATIONS — PIERCING THE CORPORATE VEIL.

The traditional application of the doctrine of piercing the corporate veil has been to protect a corporation's creditors, or other outsiders, when there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate entity in an attempt to avoid legal obligations; this traditional application is inapplicable in the absence of fraud, illegality, or injustice.

5. INSURANCE — AUTOMOBILES — CORPORATE VEHICLES.

The Legislature, in providing the limited coverage for corporate vehicles under the provision regarding vehicles owned or registered by an employer, chose to limit coverage to the situations clearly defined in the statute (MCL 500.3114[3]; MSA 24.13114[3]).

6. INSURANCE — INTEREST — STACKING.

The stacking of interest awards is permissible where several statutes provide for the awarding of interest.

7. INSURANCE — PRIORITY OF INSURERS.

The preferred method of resolution of priority questions between two insurers is for one of the insurers to pay the claim and sue the other in an action of subrogation; this permits the insured person to receive prompt payment and all issues may be resolved in the later dispute as the insurer who paid stands in the shoes of the insured, as its subrogee, possessing all of the insured's legal rights.

8. INSURANCE — INTEREST PENALTIES.

The purpose of the interest-penalty provision found in the no-fault act is to see that the injured party is quickly paid and such provision is not intended to apply between insurers when

a dispute involves two insurers acting in good faith (MCL 500.3142; MSA 24.13142).

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C. (by James L. Borin), for plaintiff.*

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C. (by John P. Jacobs and Ernest R. Bazzana), for defendant.*

Before: ALLEN, P.J., and D. C. RILEY and R. R. FERGUSON,* JJ.

ALLEN, P.J. When an insurer issues a no-fault policy to a closely held corporation, and the corporation provides cars for the sole stockholder and his family for business and personal use and the family has no other family car, must the insurer provide no-fault benefits to the minor son when he is injured in an automobile accident that involves none of the corporation vehicles? We think that the trial court correctly found no liability on the part of the corporation's insurer.

Plaintiff issued a policy of no-fault insurance to B. C. Lynn Construction, Inc., of which Bernard C. Lynn was the president and sole shareholder. In 1975, Patrick Lynn lived with his father, Bernard, and performed some work as a laborer for his father's company. The corporation provided three automobiles for the personal use of Bernard Lynn and his family; all three autos were owned, registered, and insured in the name of the corporation, which paid for the cars and the insurance. No member of the Lynn family owned a personal car.

In April 1975, Patrick Lynn was injured while a passenger in an automobile driven by Keith Ragap, owned by Harry Ragap, and insured by defen-

* Circuit judge, sitting on the Corut of appeals by assignment.

dant Citizens Insurance Company of America. After the accident, plaintiff paid medical and work-loss benefits to Patrick Lynn. In February 1976, plaintiff asked defendant to take over the payments, but defendant refused. Plaintiff suspended payments, but reinstituted them after Patrick Lynn brought suit against both insurers. That suit was then dropped. At the time of trial, Patrick Lynn had received $23,012.49 from plaintiff.

Plaintiff initiated the instant action as equitable subrogee of Patrick Lynn to compel defendant to make future payments and to seek repayment of benefits that plaintiff had paid to Patrick Lynn. After a bench trial on February 4, 1980, the court awarded judgment to plaintiff for $44,518.73, which included statutory interest, an interest penalty, attorney fees, and costs. Defendant has appealed by right, arguing first, that it should not be held liable; second, that the amount of the judgment was wrongly computed; and third, that it should not be asked to pay an interest penalty.

We must first examine whether the trial court erred in ruling that the corporate insurer was not liable for personal protection benefits. Such benefits are available under MCL 500.3114; MSA 24.13114, which provides in pertinent part:

"(1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy * * * applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident."

Subsections (2) and (5) are inapplicable to this case. Subsection (3) provides:

"An employee, his or her spouse, or a relative of

either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle."

The parties agree that had Patrick Lynn been occupying a corporation car at the time of the injury, plaintiff, as the insurer of the furnished vehicle, would bear responsibility for providing personal protection benefits to Patrick. Here, however, Patrick occupied another automobile, so this section is inapplicable. As none of the exceptions listed in § 3114 apply, plaintiff must provide personal protection benefits only if § 3114(1) can be read as requiring coverage by a corporate insurer under the facts of this case.

To do so requires us to rewrite the insurance policy issued to B. C. Lynn Construction, Inc., replacing a named insured, the corporation, with an individual insured, Bernard Lynn. Were we to do so, Patrick Lynn, who was a relative domiciled in the same household, would be covered under § 3114(1). The trial court declined to do so, however, and we agree.

Defendant argues that Bernard Lynn was an owner of the company car, so the insurance on the car should cover his family. We recognize that in certain situations, an individual with exclusive use of a vehicle for more than 30 days may be regarded as the owner of the vehicle. MCL 257.37; MSA 9.1837, *State Farm Mutual Automobile Ins Co v Sentry Ins,* 91 Mich App 109, 113; 283 NW2d 661 (1979), *lv den* 407 Mich 911 (1979). Here, however, a holding that Bernard Lynn is the individual owner of the vehicles will not affect the outcome of the case. Personal protection insurance

benefits are payable to the person named in the policy, the person's spouse, or a relative domiciled in the same household, not to the owner of the vehicle. MCL 500.3114(1); MSA 24.13114(1). As it is unquestioned that the named insured in the policy at issue was B. C. Lynn Construction, Inc., a redetermination of the ownership based on statutory construction does little to advance defendant's cause.

Defendant's remaining argument about liability has more merit. It asserts that we should pierce the corporate veil and hold that under the facts of this case, where a sole stockholder has exclusive use of a corporate vehicle, the stockholder should be regarded as the insured person.

Generally, a corporation is treated as a legal entity distinct from its shareholders. *Robards v Estate of Leopold J Kantzler,* 98 Mich App 414, 417; 296 NW2d 265 (1980). The corporate form is valid and will be protected by courts even when there is a single stockholder who is entitled to dominate the company and receive all of its profits. *Gottlieb v Arrow Door Co,* 364 Mich 450; 110 NW2d 767 (1961).

The fiction of a distinct corporate entity separate from the stockholders is a convenience introduced in the law to serve the ends of justice. When this fiction is invoked to subvert justice, it may be ignored by the courts. *Paul v University Motor Sales Co,* 283 Mich 587, 602; 278 NW 714 (1938).

The traditional application of "piercing the corporate veil" has been to protect a corporation's creditors, or other outsiders, when there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate entity in an attempt to avoid legal obligations. *People ex rel Attorney General v Michigan*

*Bell Telephone Co,* 246 Mich 198, 204; 224 NW 438 (1929). This Court has held that the corporate veil should not be pierced in such a situation in the absence of fraud, illegality, or injustice. *Soloman v Western Hills Development Co (After Remand),* 110 Mich App 257, 263; 312 NW2d 428 (1981). This traditional application of piercing the corporate veil doctrine is inapplicable in the present case, where there has not even been an allegation of any fraud, illegality, or injustice by any member of the corporation. Moreover, the corporation and its shareholder are not parties in this action, so even had they been involved in some illegality, equity would not be served by piercing the corporate veil in this case.

Michigan courts have recognized that it may be appropriate to pierce the corporate veil in other situations. *Williams v American Title Ins Co,* 83 Mich App 686, 698; 269 NW2d 481 (1978). In *Montgomery v Central National Bank & Trust Co of Battle Creek,* 267 Mich 142; 255 NW 274 (1934), the Supreme Court upheld piercing a corporate veil to benefit a shareholder when necessary to uphold deed restrictions in a deed executed by the individual shareholder. Similarly, in *Brown Brothers Equipment Co v State Highway Comm,* 51 Mich App 448; 215 NW2d 591 (1974), this Court ruled that in a condemnation action where all parties had ignored the corporate structure during settlement negotiations, it would be inequitable to recognize the corporate form for determining damages in an appeal. In both of these situations, a shareholder who was a party to the action sought to avoid the corporate form. In the case at bar, however, it is a stranger to the corporation that is seeking to pierce the corporate veil.

Defendant points to a single Minnesota case that

it claims supplies authority for us to ignore the corporate structure. The facts in *Roepke v Western National Mutual Ins Co,* 302 NW2d 350 (Minn, 1981), are indeed similar to those before us. In each, an individual who received a corporate car as a perquisite of his job was not insured under any personal no-fault policy. The Minnesota Supreme Court, addressing an entirely different legal issue than is before us, permitted the shareholder's widow to pierce the corporate veil to permit stacking of six corporate no-fault policies so as to provide insurance coverage coextensive with the full loss. We do not believe that it is appropriate to follow Minnesota's example of piercing the corporate veil when an entirely different legal issue is involved here. Moreover, we observe that the *Roepke* opinion was specifically limited to its facts and is not totally consistent with a prior opinion written by the same judge, when other issues were before the court. Compare, *Kaysen v Federal Ins Co,* 268 NW2d 920 (Minn, 1978). Accordingly, we decline to follow Minnesota's example and pierce the corporate veil in this case.

We believe that our conclusion is supported by public policy. In writing a no-fault insurance policy for B. C. Lynn Construction, Inc., Allstate undertook a limited risk. As a part of a blanket corporate insurance policy, Allstate agreed to provide no-fault benefits if any of the corporation's employees, their spouses, or the relatives of either domiciled in the same house, should be injured *while occupying a corporate car.* If we were to rewrite the policy in this case so that it provides blanket no-fault coverage to those individuals while in any car, we would be greatly expanding the zone of risk. This expanded coverage in this case would place the burden of investigating a

corporation's structure and perquisites on the insurer whenever it issued a no-fault policy to a corporation. We do not believe that the Legislature, in providing the limited coverage for corporate vehicles under § 3114(3), intended to place such a burden on the insurance industry. Instead, we believe the Legislature wisely chose to limit coverage to certain clearly defined situations. We believe the trial court properly declined to interfere with this well-chosen policy and affirm the court's determination of liability.

Defendant raises two additional issues related to the amount of the award. First, defendant argues that the trial court erred in awarding plaintiff 12% interest on the claim pursuant to MCL 500.3142(3); MSA 24.13142(3), asserting that the interest should be awarded only when an insured, and not an insurer, is seeking the overdue claim.

The total judgment was $44,518.73. This figure included $23,012.49, plus interest of $19,606.24 and costs. The interest figure included both 12% interest on the insurance claim computed from February 7, 1976, pursuant to the overdue claim provision of the no-fault act, MCL 500.3142(3); MSA 24.13142(3), and interest pursuant to MCL 600.6013; MSA 27A.6013. The latter amount is 6% from the date of the filing of the complaint through June 1, 1980, and 12% thereafter, until satisfaction of judgment. The stacking of interest is permissible. *Wood v Detroit Automobile Inter-Ins Exchange,* 99 Mich App 701, 709; 299 NW2d 370 (1980), *aff'd in part and rev'd in part* 413 Mich 573; 321 NW2d 653 (1982).

Initially, we note that whenever a priority question arises between two insurers, the preferred method of resolution is for one of the insurers to pay the claim and sue the other in an action of

subrogation. *Farmers Ins Group v Progressive Casualty Ins Co,* 84 Mich App 474, 484; 269 NW2d 647 (1978). This resolution permits the insured person to receive prompt payment while the insurers thereafter dispute their liabilities. All issues may be resolved in the later dispute as the insurer who paid stands in the shoes of the insured, as its subrogee, possessing all of the insured's legal rights. *Federal Kemper Ins Co v Western Ins Cos,* 97 Mich App 204, 208; 293 NW2d 765 (1980). This method was followed here and Patrick Lynn received benefits while this case was pending.

Defendant argues that the instant case does not involve the typical situation where the insurer refuses to pay the insured. Instead, the dispute involves a good-faith dispute between insurance companies during which time young Lynn was fully compensated. Thus, says defendant, there was no reason to award the 12% interest. Plaintiff argues that the penalty provision (MCL 500.3142; MSA 24.13142) is not expressly limited to injured claimants but, even if it were, Allstate would qualify to recover the penalty since, in an action for reimbursement of no-fault benefits, an insurer stands in the shoes of the claimant. *Federal Kemper Ins Co, supra.* Plaintiff is quick to point out that during the time this matter was in dispute, Citizens had the use of $23,012.49 which it should have paid to Patrick Lynn.

The issue is close and one of first impression. Michigan's no-fault act is modeled after the Uniform Motor Vehicle Accident Reparations Act and it may be presumed generally that the Legislature intended to follow the model act. See, for example, *Citizens Ins Co of America v Tuttle,* 411 Mich 536; 309 NW2d 174 (1981), *Miller v State Farm Mutual Automobile Ins Co,* 410 Mich 538; 302 NW2d 537 (1981), *Adkins v Auto-Owners Ins Co,* 105 Mich

App 431; 306 NW2d 312 (1980), *Luce v Gerow*, 89 Mich App 546; 280 NW2d 592 (1979), *Pries v Travelers Ins Co*, 86 Mich App 221; 272 NW2d 247 (1978), *Nawrocki v Hawkeye Security Ins Co*, 83 Mich App 135; 268 NW2d 317 (1978).

Michigan's § 3142 substantially follows § 23 of the uniform act. The Commissioners' Comment as to § 23 states in pertinent part:

"Subsection (b), subjecting overdue payments to [18] per cent interest, is another provision encouraging periodic payment of benefits without delay. The 18 per cent figure is recommended because it is the interest rate which an insured would be required to pay in many transactions involving consumer credit, and it is sufficiently high to induce the reparation obligor to pay promptly. A figure substantially lower, 6 per cent for example, would neither compensate an ordinary consumer for loss of use of the funds nor provide sufficient inducement for prompt payment." 14 ULA, p 97.

That comment focuses on the relationship between the insured and his insurer and contains no suggestion that the interest-penalty provision would apply between insurers. Similarly, § 23(a) itself speaks of the relationship between the insured and the "reparation obligor", without suggesting that another insurer might possibly be responsible for the interest penalty.

In addition, there is other intrinsic evidence in the no-fault act that the interest-penalty provision was not intended to be assessed between insurers. There are at least three situations in the no-fault act in which an insurer, required to pay no-fault benefits initially, has the right to recoup or recover benefits paid and other enumerated expenses and, yet, in none of those instances does the statute provide for the recovery of interest by the

insurance company that paid the benefits initially. Thus, for example, under § 3114, where two or more insurers share the same priority of liability for no-fault benefits, and one of them pays the total liability, that insurer is entitled to partial recoupment from the other "together with a reasonable amount of partial recoupment of the expense of processing the claim". MCL 500.3114(6); MSA 24.13114(6). That statute does not provide for the recovery of interest by the insurer that pays the liability initially.

Similarly, under § 3116(2), when a claimant recovers a judgment in tort, the insurer that paid no-fault benefits is entitled to recover "a sum equal to the benefits" paid. MCL 500.3116(2); MSA 24.13116(2). That statute also does not provide for the recovery of interest by the insurer.

Finally, under § 3177, an insurer which pays assigned claims uninsured motorist no-fault benefits is entitled to "recover such benefits paid and appropriate loss adjustment costs incurred" from the owner or registrant of the uninsured motor vehicle. MCL 500.3177; MSA 24.13177. Again, that statute does not provide for the recovery of interest.

Finally, neither of the cases cited by plaintiff as authority for imposing the penalty provision against another insurer are apposite. *Wood v DAIIE, supra,* involved an action brought by the plaintiff Wood against defendant Detroit Automobile Inter-Insurance Exchange, insurer of the motor vehicle owner involved in the accident. In *Hartman v Ins Co of North America,* 106 Mich App 731; 308 NW2d 625 (1981), suit was brought by the injured party against the alleged recalcitrant insurance company. Both the injured party and the state-intervenor received money from the 12% penalty award.

In summary, no case law supports the imposition of the penalty provision when the dispute involves two insurers acting in good faith. Furthermore, the model act and intrinsic evidence in Michigan's no-fault act suggest that the interest penalty provision found in § 3142 was not intended to apply between insurers. The purpose of the penalty provision is to see that the injured party is quickly paid. That purpose was fulfilled in the instant case. Accordingly, we find that the trial court erred in awarding the penalty payment to plaintiff. In all other respects the award is affirmed.

Affirmed in part, reversed in part, and remanded for recomputation of interest in accordance with this opinion. No costs, neither party having prevailed in full.