Keena WARING, Appellant,

v.

William MOORE, et al., Appellees.

No. 12–CV–0556.

District of Columbia Court of Appeals.

Submitted March 5, 2013.

Decided Aug. 22, 2013.

Brandi S. Nave, Washington, DC, for appellant.

James C. Mehigan, Washington, DC, for appellees.

Before EASTERLY and McLEESE, Associate Judges, and FERREN, Senior Judge.

McLEESE, Associate Judge:

This case presents the question whether a taxicab involved in an accident was "uninsured" under District of Columbia law, thereby triggering uninsured-vehicle coverage. The trial court concluded that the taxicab at issue was not "uninsured." We reverse.

I.

The parties do not dispute the following facts. While driving a vehicle insured by AIG, Ms. Waring was involved in an accident with a taxicab driven by Mr. Moore. Ms. Waring initially filed a claim with Mr. Moore's insurance company, which disclaimed coverage for the incident on the ground that Mr. Moore had failed to provide timely notice of the accident pursuant to the terms of his insurance contract. Ms. Waring then sought recovery from AIG under a provision in the insurance policy providing coverage for damages suffered in accidents involving uninsured vehicles. AIG rejected Ms. Waring's claim.

Ms. Waring subsequently sued AIG for breach of contract, arguing that Mr. Moore was "uninsured" for the purposes of AIG's uninsured-vehicle coverage.[1] The

1. Ms. Waring also named Mr. Moore as a defendant, but he was dismissed from the action based on failure of service. AIG, however, subsequently filed a third-party com-

plaint against Mr. Moore. Mr. Moore has not participated in this appeal. The record does not indicate whether any relief was sought

trial court granted summary judgment for AIG, concluding that a taxicab covered by an insurance policy cannot be considered uninsured, because D.C.Code § 50–314(c) makes taxicab insurers absolutely liable for claims brought against the driver of the insured taxicab.

## II.

To prevail on a motion for summary judgment, a party "must establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law." *Northbrook Ins. Co. v. United Servs. Auto. Ass'n,* 626 A.2d 915, 917 (D.C.1993). In reviewing orders granting summary judgment, this court conducts an independent examination of the record and applies the same standard as the trial court. *Id.* We construe the record in the light most favorable to the party opposing summary judgment. *Id.* "This court reviews both trial court decisions granting summary judgment and questions of statutory interpretation *de novo.*" *District of Columbia v. Place,* 892 A.2d 1108, 1110–11 (D.C.2006).

The trial court and the parties viewed the issue in this case as one of statutory construction: whether Mr. Moore's taxicab was an uninsured vehicle within the meaning of D.C.Code § 31–2406(f) (2001–2012). Section 31–2406(f) requires automobile insurers to include in their policies coverage for accidents involving uninsured motor

vehicles. *See also Macci v. Allstate Ins. Co.,* 917 A.2d 634, 636 (D.C.2007). Section 31–2406(f)(1)(B) defines "uninsured motor vehicle" as including motor vehicles that are "covered by a motor vehicle liability policy of insurance but [as to which] the insurer denies coverage for any reason...." In determining whether AIG's obligation to provide uninsured-vehicle coverage was triggered, we consider as well the wording of the insurance policy. *See, e.g., Hill v. Maryland Cas. Co.,* 620 A.2d 1336, 1337 & n. 2 (D.C.1993). That policy provides for uninsured-vehicle coverage, and defines "uninsured motor vehicle" as including vehicles "for which an insuring or bonding company denies coverage." Neither party has suggested that the insurance policy's definition of "uninsured motor vehicle" should be construed differently from the statutory definition of the term. We therefore focus, as the trial court and the parties have, on the language of § 31–2406(f)(1)(B).

As previously noted, the provision requiring uninsured-vehicle coverage defines "uninsured motor vehicle" as including motor vehicles that are "covered by a motor vehicle liability policy of insurance but [as to which] the insurer denies coverage for any reason...." D.C.Code § 31–2406(f)(1)(B). The trial court appears to have assumed that Mr. Moore's insurer "denied coverage" with respect to the accident at issue.[2] The trial court reasoned,

---

against Mr. Moore's insurance company in a separate proceeding.

**2.** Mr. Moore's insurer stated that it was disclaiming "coverage." Although this court does not appear to have addressed the question, there is authority for the proposition that an insurer denies coverage for purposes of uninsured-vehicle insurance when the insurer *refuses to pay a claim* brought by a third party on the ground that the policy holder failed to cooperate with the insurer. *See, e.g., Allstate Ins. Co. v. Jones,* 261 Va. 444, 544

S.E.2d 320, 322–23 (2001). It is not entirely clear that all courts would agree with that conclusion, however, because some courts appear to draw various distinctions between denials of "coverage" and other refusals to pay claims. *See generally* 2 Irvin E. Schermer & William J. Schermer, *Automobile Liability Insurance 4th* § 23:25, at 23–49 (2012) ("not all courts construe a refusal to provide coverage ... as a denial of coverage"). We need not decide the issue, however, because the parties have not raised it and the trial court did not decide it.

however, that Mr. Moore's taxicab could not be viewed as "uninsured," because a separate provision, D.C.Code § 50–314(c), made Mr. Moore's insurer absolutely liable for any claim in connection with the accident at issue in this case.[3] We reach a different conclusion about the relationship between § 31–2406(f)(1)(B) and § 50–314(c).

In essence, the trial court concluded that the disclaimer of coverage by Mr. Moore's insurer could not trigger AIG's duty to provide uninsured-vehicle coverage, because the insurer's disclaimer was legally invalid in light of § 50–314(c)'s imposition of absolute liability. But § 31–2406(f)(1)(B) by its terms is not limited to instances in which the insurer validly denies coverage. Rather, it applies when the insurer denies coverage "for any reason." Although this court does not appear to have addressed the issue, courts in other jurisdictions have interpreted statutory or contractual provisions similar to § 31–2406(f)(1)(B) to apply without regard to whether the insurer's denial of insurance coverage was legally valid. *See, e.g., Allstate Ins. Co. v. Jones,* 261 Va. 444, 544 S.E.2d 320, 322–23 (2001) (under statute providing that "uninsured motor vehicle' means a motor vehicle for which . . . there is . . . insurance but the insurer . . . denies coverage for any reason whatsoever, including failure or refusal of the insured to cooperate with the insurer," driver's vehicle became uninsured when insurer denied coverage on ground that driver had breached duty to cooperate as required by terms of policy); *Home Ins. Co. v. Williams,* 252 Ark. 1012, 482 S.W.2d 626, 629 (1972) (vehicle considered uninsured because policy provided that vehicle is uninsured if "with respect to [the vehicle] there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder," and "[t]he driver of the car and its owner testified that their individual liability insurance carrier disclaimed coverage"); *Omaha Indem. Co. v. Pall, Inc.,* 817 S.W.2d 491, 493, 498–99 (Mo.Ct.App.1991) (where tort victim's insurance policy defined vehicle as uninsured if insurer "denie[d] coverage," denial of coverage by tortfeasor's insurer rendered tortfeasor's vehicle uninsured, whether or not denial of coverage was legally valid). *See generally* 2 Irvin E. Schermer & William J. Schermer, *Automobile Liability Insurance 4th* § 23:26, at 23–49 (2012) ("A[n] uninsured motorist coverage insurer is ordinarily estopped to contest the validity or the bona fides of an express denial of coverage in a direct contest between only itself and its insured. [A] mere denial of coverage . . . whether capricious or not, whether sustainable or not, is sufficient to involve the uninsured motorist coverage.' ") (quoting *Boulnois v. State Farm Mut. Auto. Ins. Co.,* 286 So.2d 264, 267 (Fla.Dist.Ct.App. 1973); citing cases; footnote omitted).[4]

3. Section 50–314(c) provides that "[t]he liability of a surety or insurer on an indemnity or policy of liability issued under this section shall be absolute for damages adjudged against an insured [taxicab driver]."

4. In some jurisdictions, the applicable statute expressly provides that mandatory uninsured-vehicle coverage is not triggered unless the denial of coverage is legally valid. *See* 2 Irvin E. Schermer & William J. Schermer, *Automobile Liability Insurance 4th* § 23:26, at 23–49

to –50 & n. 6 (2012). Section 31–2406(f)(1)(B) contains no such language, and instead speaks broadly of "any reason" for denial. One treatise suggests that some courts have held, in the absence of explicit language on the point, that uninsured-vehicle coverage will not be triggered unless the insurer's denial of coverage was legally valid. *See* 9 Steven Plitt, Daniel Maldanado, & Joshua D. Rogers, *Couch on Insurance 3d* § 123–38, at 123–123 & n. 2 (2008) (citing cases). It is not clear to us that the cases cited in the

When § 31–2406(f)(1)(B) is understood in this way, we see no inconsistency with § 50–314. The latter provision may be quite relevant to whether Mr. Moore's insurer acted lawfully in disclaiming coverage. As we have already explained, however, the answer to that question is not relevant to whether Mr. Moore's taxicab was an uninsured vehicle within the meaning of § 31–2406(f)(1)(B). We note that our interpretation of the interaction between these two provisions does not leave uninsured-vehicle insurers such as AIG without recourse against other insurers who erroneously refuse to pay claims. *See, e.g.,* 2 Irvin E. Schermer & William J. Schermer, *Automobile Liability Insurance 4th* § 23:26, at 23–49 to –50 & n. 5 (2012) ("[I]f the denial was in fact improper, the prospect of injury to the uninsured motorist carrier is not great since its payment may be recouped by way of subrogation."); *id.* at 23–51 to –52 & n. 12 (uninsured-vehicle insurer may seek indemnification). Moreover, the conclusion we reach fosters an important policy objective underlying no-fault insurance, by ensuring prompt payment of claims without unnecessary delay resulting from coverage disputes. *See, e.g., Van Kampen v. Waseca Mut. Ins. Co.,* 754 N.W.2d 578, 583 (Minn.Ct.App.2008) ("[T] he policy goals of the No–Fault Automobile Insurance Act ... include encouraging prompt payment and easing the burden of litigation."). *Cf., e.g., Allstate Ins. Co. v. Citizens Ins. Co. of America,* 118 Mich.App. 594, 325 N.W.2d 505, 509 (1982) (when priority question arises between two insurers, requiring one insurer to pay claim and sue other in subrogation action "permits the insured person to receive prompt payment while the insurers thereafter dispute their liabilities").

treatise actually stand for the asserted principle. In any event, we see no basis for inter-

For the foregoing reasons, we reverse the judgment and remand for further proceedings.

*So ordered.*

polating such a requirement into § 31–2406(f)(1)(B).