# STATE OF MICHIGAN

# COURT OF APPEALS

LINDITA PIRGU, Guardian and Conservator of
FERIDON PIRGU, a Legally Incapacitated
Person,

UNPUBLISHED
December 16, 2014

Plaintiff-Appellant,

v

No. 314523
Oakland Circuit Court
LC No. 2011-119378-NI

UNITED STATES AUTOMOBILE
ASSOCIATION, d/b/a USAA INSURANCE
AGENCY, INC.,

Defendant-Appellee.

Before: BECKERING, P.J., and HOEKSTRA and GLEICHER, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

I concur with most of the majority's well-reasoned opinion. I respectfully depart from the majority only regarding the calculation of attorney fees due under MCL 500.3148(1). In my view, the trial court abused its discretion by strictly applying a contingency-fee approach to the determination of counsel's attorney-fee request. Although the trial court belatedly paid lip service to the factors set forth in *Wood v DAIIE*, 413 Mich 573, 588; 321 NW2d 653 (1982), it failed to actually employ them. In my view, the contingency-fee construct the court utilized contravenes both MCL 500.3148(1) and *Wood*, necessitating remand for a true attorney-fee hearing.

## I. FACTS AND PROCEEDINGS

In October 2008, plaintiff Feridon Pirgu was struck by a car while riding his bicycle. He sustained skull and orbital fractures and brain bleeding, and emerged from his hospitalization with a closed head injury diagnosis. Because Pirgu did not own a vehicle, the Michigan Assigned Claims Facility (MCAF) assigned responsibility for payment of Pirgu's first-party no-fault benefits to Citizens Insurance Company. Citizens paid Pirgu a panoply of benefits including for attendant care, replacement services, and wage loss while concomitantly pursuing a declaratory judgment action contending that defendant United States Automobile Association (USAA) bore primary liability. Ultimately, Citizens prevailed. USAA began adjusting the claim in 2010, and immediately discontinued payment of Pirgu's attendant care, replacement services, and wage-loss benefits.

-1-

Pirgu filed this first-party no-fault action seeking reinstatement of the discontinued benefits up to the date of the trial and into the future. He also sought attorney fees. At trial, USAA admitted that Pirgu had suffered a closed head injury, but raised several defenses to payment: any ongoing disabilities were exaggerated, related to a 2004 accident, or were so minor that he had no need of supplemental care and could return to work. Multiple physicians (at least nine) testified at trial concerning the injuries sustained in both accidents and Pirgu's ongoing need for care and treatment. The trial consumed nine days spread over two-and-a-half weeks. The jury found that Pirgu was still suffering from the effects of the 2008 accident when USAA cut off his benefits. It awarded $54,720.00 for attendant-care benefits, $7,992.00 in wage-loss benefits, and $7,525.44 in penalty interest.

Pirgu's counsel, Richard M. Shulman, sought attorney fees in the amount of $220,945.00. He claimed that he had expended more than 600 hours of time prosecuting the case and that his normal billing rate was $350 an hour. The trial court found that fees were warranted because USAA's failure to pay the awarded PIP benefits was unreasonable. But rather than considering Shulman's proposed hourly rate and the number of hours he allegedly invested, the trial court focused only on the verdict, observing that the jury awarded far less than the $200,000 to $400,000 that Shulman had requested.[1] Without citing any legal authority, the trial court ruled: "I'm going to give you one-third of [$]54,000. . . ." After adding the interest awarded (approximately $7,000), the trial court revised its calculations, determining that because Pirgu had obtained roughly $61,000 and one-third of that amount was "about $25,000," Shulman would be entitled to $25,000. Shulman protested:

> MR. SHULMAN: Your Honor, a contingent fee . . . isn't proper in this case because it's -- it's --
>
> THE COURT: Do you want me to give you less than that?
>
> MR. SHULMAN: Of course not, your Honor.
>
> THE COURT: Okay. Then that's what you're getting.

Later during the same hearing, Shulman and the trial court engaged in a second dialogue concerning attorney fees. Shulman insisted that the court was required to consider the factors enumerated in *Wood*, 413 Mich at 513, and was not permitted to award attorney fees due under MCL 500.3148(1) on a contingency-fee basis. The trial court interrupted, launching the following exchange concerning *Wood*:

> THE COURT: No, it talks about the expertise of the attorney, the effort put into the case, the time put into the case, the --
>
> MR. SHULMAN: The --

---

[1] In his closing argument, Shulman offered the jury several different hourly rates for attendant care. This partially accounted for the range of the requested verdict.

THE COURT: -- the results, yeah, and the --

MR. SHULMAN: -- skilled time and labor involved, the amount in question and the results achieved, the difficulty of the case, the expenses incurred, the nature and length of the professional relationship with the client --

THE COURT: Right.

MR. SHULMAN: -- and any other appropriate factors.

THE COURT: Right.

MR. SHULMAN: It seems to me that the Court . . . is ruling based on the amount that was asked of the jury, versus what was awarded and there's case law that speaks specifically to that issue, . . . and many appellate Courts have ruled, that it's not based on the amount that was asked, if you --

THE COURT: No, I understand but . . . doesn't it also relate . . . to the reasonableness of the attorney fees?

MR. SHULMAN: It -- it relates to the --

THE COURT: Is it reasonable to ask for 500,000 and get 50?

* * *

MS. BROWN: Your Honor -- but, again, you sat through the trial, there was an enormous amount of wasted time, there was an enormous amount of wasted time during the trial depositions of the experts, there was an enormous amount of time wasted on the lack of preparedness --

THE COURT: Let's put it this way, I don't know whether it was wasted but there was a lot of time that --

MS. BROWN: -- unnecessarily --

THE COURT: -- forever to ask a question sometimes.

The trial court ruled that based on the amount Pirgu recovered ($70,237.44), Shulman was entitled to $23,412.48 in attorney fees.

At a second hearing, Shulman reiterated his complaint that a contingency approach to his attorney-fee request was improper. The trial court shot him down once more:

THE COURT: -- I can take into consideration the results of the case, that's one of the things you like [sic] at, too --

MR. SHULMAN: I understand --

-3-

THE COURT:  -- and the complexity and I figure the best way of doing it is looking at it in that way and I think the attorney fees are what I granted --

MR. SHULMAN:  Well, . . .your Honor's award was based on your -- what your Honor came up with was based on one-third.

I believe that the case law says that . . . the starting point is the number of hours and the prevailing --

THE COURT:  -- or adding.

MR. SHULMAN:  I'm sorry?

THE COURT:  And then you start reducing or adding.

MR. SHULMAN:  And . . . according to your Honor's award, you awarded $38.00 an hour in my time, which I disagree with, respectfully, your Honor, and -- and I intend to --

* * *

MR. SHULMAN:  But your Honor's award was effectively $38.00 an hour for the 600 plus hours of time that I spent, from 2010 --

THE COURT:  How much of that time --

MR. SHULMAN:  -- for trial.

THE COURT:  -- shouldn't have been spent?

How much of that time was --

MR. SHULMAN:  Your Honor, that time was necessary.

THE COURT:  No, it wasn't.

I sat through the trial, I watched the depositions, you fumbled around, forever, at times, took much longer than it had to take.

On appeal, Pirgu contends that *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), supplies the proper method for determining attorney fees in a first-party no-fault case.  The majority holds that *Wood* rather than *Smith* applies, and that the trial court's approach was reasonable.  I respectfully suggest that under either *Smith* or *Wood*, the trial court abused its discretion by neglecting to consider the number of hours Shulman invested in the case and his appropriate hourly rate.  In my view, only after considering that information could the trial court calculate a reasonable attorney fee.

## II. THE *WOOD* OR *SMITH* FACTORS

In decreeing no-fault insurance compulsory for all motorists, the Legislature contemporaneously undertook to highly regulate Michigan's no-fault insurance business. In *Shavers v Attorney General*, 402 Mich 554; 267 NW2d 72 (1978), our Supreme Court upheld the constitutionality of the no-fault act's complex regulatory scheme, finding its enactment justifiable as an effort to remedy the "operational deficiencies of the tort system." *Id*. at 621. One such tort system shortcoming involved the "[l]engthy delays . . . in compensating those injured in automobile accidents—often in cases where the need for prompt compensation was strongest." *Id*. at 621-622. "The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Id*. at 578-579.

Accordingly, the statutory requirement that an insurer promptly pay benefits due holds a central place among the act's regulations. Accident victims are entitled to payment of certain personal injury protection benefits as soon as "the loss accrues." MCL 500.3142(1). Once an expense is incurred, benefits must be paid "within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Commanding punctual payment of compensation for economic losses, the *Shavers* Court explained, "may remedy the delays under the tort system" as well as the tort system's failure to fairly compensate all "personal injury victims of motor vehicle accidents[.]" *Shavers*, 402 Mich at 622.

The Legislature gave bite to the 30-day pay regulation by reinforcing it with two provisions. First, "[a]n overdue payment bears simple interest at the rate of 12% per annum." MCL 500.3142(3). This is a penalty for insurer misconduct rather than a compensation provision. *Univ of Mich Regents v State Farm Mut Ins Co*, 250 Mich App 719, 735; 650 NW2d 129 (2002). The purpose of this interest-penalty provision "is to see that the injured party is quickly paid." *Allstate Ins Co v Citizens Ins Co of America*, 118 Mich App 594, 607; 325 NW2d 505 (1982).

The second protection, the no-fault act's attorney-fee provision, serves precisely the same goal. *Darnell v Auto-Owners Ins Co*, 142 Mich App 1, 14-15; 369 NW2d 243 (1985). An insurer that unreasonably refuses to pay benefits is not only on the hook for 12% interest, but also bears responsibility for paying the fees of the vindicated claimant's attorney. A claimant's attorney fees "shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1).

> The purpose of the no-fault act's attorney-fee penalty provision is to ensure prompt payment to the insured. Accordingly, an insurer's refusal or delay places a burden on the insurer to justify its refusal or delay. The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty. [*Ross v Auto Club Group*, 481 Mich 1, 11; 748 NW2d 552 (2008) (citations omitted).]

Thus, the no-fault act protects claimants from bearing their own legal fees when challenging a recalcitrant insurer. Indisputably, the attorney-fee and interest provisions serve also to deter "unreasonable payment delays and denials of no-fault benefits that force the commencement of legal action[.]" *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins Co*, 250 Mich App 35, 43; 645 NW2d 59 (2002). By including these provisions in the no-fault act, the Legislature deemed it proper to punish as well as to deter:

> Permitting the imposition of these penalty provisions by health care providers provides a legitimate and enforceable incentive to no-fault insurers to perform their payment obligations, imposed by operation of law, in a reasonable and prompt manner. [*Id*. at 44].

And because the no-fault act is remedial in nature, its provisions must be liberally construed in favor of the intended beneficiaries. *Frierson v West American Ins Co*, 261 Mich App 732, 734; 683 NW2d 695 (2004).

In *Wood*, the Supreme Court adopted specific guidelines for determining a "reasonable" attorney fee in cases brought under the first-party provisions of the no-fault act. Acknowledging that "there is no precise formula for computing the reasonableness of an attorney's fee," the Court held that "a trial court should consider" the following guidelines, as well as any other factors the court deems relevant:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Wood*, 413 Mich at 588, citing *Crawley v Shick*, 48 Mich App 728, 737; 211 NW2d 217 (1973).]

Here, the trial court ruled USAA had unreasonably denied coverage; USAA has not challenged this finding. Having made that decision, the trial court was obligated to assess the amount of attorney fees owed by applying the factors set forth in *Wood*.[2] But instead of taking the time to carefully evaluate Shulman's professional standing and experience, the time, skill and labor involved in obtaining Pirgu's recovery, the difficulty of the case, the expenses incurred and the nature and length of Shulman's professional relationship with Pirgu, the trial court skipped to a single *Wood* factor: the amount in question and the results achieved. As to that factor, the trial court simply awarded one-third of the verdict. Although the trial court obviously disagreed that Shulman was entitled to compensation for 600 hours of work, it made no effort to determine how

---

[2] Whether the *Wood* factors have been supplanted by those set forth in *Smith*, 481 Mich at 522, is an interesting question that remains unresolved. See *Augustine v Allstate Ins Co*, 292 Mich App 408, 429 n 2; 751 NW2d 472 (2008). I believe that in making a fee-reasonableness determination, a court should draw on the factors set forth in MRPC 1.5(a), as described by the Supreme Court in *Smith*. Unlike the majority, I see no meaningful difference between assessing attorney fees as case evaluation sanctions, and assessing them as sanctions for unreasonably denied or delayed payment of PIP benefits.

many hours of Shulman's time were necessary to achieve the verdict, or the rate at which Shulman deserved to be paid.

In my view, full application of the *Wood* (or *Smith*) factors is necessary in first-party no-fault cases for three reasons. First, a claimant usually has no alternative but to resort to a contingency-fee legal arrangement when an insurer unreasonably denies paying benefits. Few people, particularly injured accident victims, can afford to pay an attorney an hourly rate. Thus, most attorneys handling first-party claims do so on a contingency-fee basis. Despite the ubiquity of the contingency-fee arrangement in such cases, neither this Court nor the Supreme Court has ruled that a trial court may avoid the necessity of an attorney-fee hearing (or a reasonable equivalent) by simply dividing the judgment amount by three.

Second, the dollar amount of the first-party no-fault benefits at issue may be relatively small. For example, a dispute may focus on whether a claimant is entitled to attendant care for only two or three hours a day, such as for bathing and dressing assistance. The act's attorney-fee provision provides attorneys an incentive to undertake cases involving small claims that nonetheless loom large to the injured party. In other words, despite that the contingency fee in such cases might be minimal, MCL 500.3148(1) incentivizes lawyers to undertake representation they could otherwise not afford, at the same time encouraging insurers to carefully consider benefit decisions.

Third, the vindication of small claims may require the investment of substantial attorney time. For example, if the question dividing the parties involves whether the claimed PIP benefits relate to an accident or a preexisting condition, a claimant may be required to present extensive expert testimony spanning many years of treatment. In such a case, the contingent-fee attorney not only risks coming away empty handed despite a significant time investment, but necessarily incurs substantial expenses in the preparation and litigation of the case (depositions, travel and witness fees) that may never be reimbursed. And even if the attorney prevails, a court may find his hours or his expenses duplicative, unnecessary, or inefficiently spent.

In the examples I have provided—small dollar amounts at stake or complex fact situations—a contingency-fee based award is likely to be unreasonable. Under such circumstances, the contingency fee does not represent the actual value of an attorney's services to the client, and may well result in a windfall award for the insurer. Other cases—such as those involving considerable amounts of overdue benefits that may be easily proven—may yield a windfall for the claimant. To prevent such injustices and to avoid watering down the impact of no-fault act's attorney-fee provision, the Supreme Court mandated application of the *Wood* factors. Under that rubric, the analysis commences with an assessment of the number of hours expended and the attorney's reasonable rate. The remaining factors allow a court to adjust a fee award upward or downward based on the equities of a particular case.[3]

---

[3] In analyzing other statutory attorney-fee provisions, our Supreme Court has never approved a contingency-fee shortcut approach. See *Michigan Dep't of Transp v Randolph*, 461 Mich 757,

Here, application of the *Wood* factors may have yielded an award similar to the one granted. But I doubt it. USAA mounted a strong, multifront defense to Pirgu's PIP claim, employing multiple experts of different medical specialties and relying on medical evidence from Pirgu's 2004 accident. This was a complicated case that required a substantial investment of attorney time. In *defense* counsel's words, the "grueling" trial flowed from "a very bitter debate between the parties[.]" Despite that the jury's award was less than Pirgu and his counsel sought, the time expended in the case was nonetheless substantial. By no means was this an easy case.

Moreover, I believe that the trial court improvidently denigrated the results Shulman achieved. USAA precipitously discontinued benefits for Pirgu's attendant care upon being declared the primary insurer. The jury clearly found that doing so was unreasonable. The verdict provided Pirgu with 4,560 additional hours of attendant care at a rate of $12 an hour, one of the rate options offered in Shulman's closing argument. Assuming that the jury determined that Pirgu's disabilities merited care for half a day, this amounts to more than a year of attendant care. And given that Pirgu had earned only $7.40 an hour before the accident, the $7,992.00 wage-loss award was certainly not insubstantial.

By presumptively concluding that a one-third attorney fee qualified as "reasonable," the trial court shirked its responsibility to consider all of the circumstances giving rise to Shulman's ability to prove Pirgu's claim, including the time and effort required to demonstrate the impropriety of USAA's actions. MCL 500.3148(1) contemplates that a fee award should represent a reasonable evaluation of the services rendered, which may be adjusted up or down by other facts. Aside from criticizing counsel's "wasted time" and "fumbl[ing]" during the trial, the court made no effort to engage the *Wood* factors. Nor did the trial court characterize Pirgu's claims as frivolous or having been brought in bad faith. While counsel's inefficiency and lack of preparation should factor into an attorney-fee award, it does not justify jettisoning the considered approach embodied in *Wood* or *Smith*.

Finally, the contingency-fee contract binding Shulman and Pirgu represents a relatively inconsequential factor under either *Smith* or *Wood*. The Legislature's determination that the penalty/deterrence attorney fee demanded under MCL 500.3148(1) must be "reasonable" means that it must be commensurate with the wrong done, which in my mind equates with the time, effort, and expense required to right the wrong rather than with an entirely separate agreement made by the client and his counsel. In other fee-shifting contexts, contingency-fee arrangements often yield upward adjustments in the attorney fees awarded, due to the risk undertaken by an attorney in bankrolling the litigation. See *Rendine v Pantzer*, 141 NJ 292, 338-339; 661 A2d 1202 (2002), and *Schefke v Reliable Collection Agency, Ltd*, 96 Haw 408, 452-454; 32 P3d 52 (2001).

The contingency-fee arrangement entered into between Pirgu and Shulman was simply one factor out of several that should have been considered in a calculus that otherwise centered on time and value. Because the trial court determined Shulman's reasonable attorney fee without

766; 610 NW2d 893 (2000) ("[W]e reject defendants' argument that a one-third contingency fee is presumptively reasonable.").

meaningfully evaluating any other pertinent factor, I would remand for a fee hearing conducted pursuant to *Smith*.


/s/ Elizabeth L. Gleicher